UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARVIN MOSBY,<br><br>        Petitioner,<br>v.<br>RENEE BAKER, et al.,<br><br>        Respondents. | Case No. 2:16-cv-03028-JCM-DJA<br><br>ORDER |

Petitioner Marvin Mosby's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the court for disposition on the merits. As discussed below, his petition is denied.

### I.     Background & Procedural History

In December 2011, a jury convicted Mosby of burglary, attempted larceny, 2 counts of larceny, larceny with victim age 60 or older, possession of credit/debit card without cardholder's consent, and obtaining and using personal identification information of another (exhibit 47).[1] The state district court adjudicated Mosby under the large habitual criminal statute and sentenced him to life with the possibility of parole after 10 years on all counts. Exhs. 50, 52. The court ran all counts concurrently, except that count 2 was consecutive to count 1. *Id.*

The Nevada Supreme Court affirmed Mosby's convictions. Exh. 70. The Nevada Court of Appeals affirmed the denial of his state postconviction petition. Exh. 93.

---

[1] Exhibits referenced in this order are exhibits to the petition, ECF No. 1, and are found at ECF Nos. 2-5.

1

Respondents have answered Mosby's federal habeas petition, and he has replied (ECF Nos. 1, 12, 13).

## II. Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that

contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.
>
> *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### III. Instant Petition

Mosby contends that his convictions on state counts 3, 5, 6, and 7 were not supported by sufficient evidence in violation of his Fourteenth Amendment due process rights (ECF No. 1, pp. 7-10).

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16. On habeas review, this court must assume that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and must defer to such resolution. *Id*. at 326. Generally, the credibility of witnesses is beyond the scope of a review of the sufficiency of the evidence. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

The Nevada Supreme Court rejected Mosby's challenge to the sufficiency of the evidence on appeal:

> This claim lacks merit because the evidence, when viewed in the light most favorable to the State, is sufficient to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992). The jury heard evidence that Mosby drove to a bus stop, boarded a bus, and was observed taking wallets from three people and touching the coat of a fourth person in a probing manner. After his arrest, Mosby was discovered in possession of cash from one victim's wallet; wallets belonging to two other victims, one of which had the victim's

4

> identification and credit cards; Canadian currency belonging to some of the victims; and a driver's license bearing the name of one individual and number corresponding to the license of another individual. Based on this evidence, we conclude that a rational juror could reasonably find that Mosby intended to commit larceny when he boarded the bus, NRS 205.060(1) (burglary defined), took property, including identification and credit cards, from several people with the intent to appropriate it for himself, NRS 205.270(1) (larceny from the person defined); NRS 205.690(1) (obtaining credit or debit card without consent of cardholder), attempted to take property from another, NRS 205.070(1); NRS 193.330(1) (attempt defined), and used the identification of another to delay or avoid prosecution, NRS 205.463(2) (obtaining and using personal identification information of another defined).

Exh. 70.

Mosby challenges the sufficiency of the evidence as to the following counts:

**Count 3 — Attempted Larceny From The Person**

> did . . . willfully, unlawfully, and feloniously, under circumstances not amounting to robbery, with intent to steal or appropriate to his own use, attempt to take from the person of another . . . Patrick LeMay, without his consent, personal property . . . a wallet and contents, by touching and attempting to take said wallet and contents from the pocket of Patrick LeMay.

Exh. 22. Las Vegas Metropolitan police detective Justin Zinger testified at Mosby's trial. Exh. 43, pp. 29-67. On the day in question, he was conducting surveillance of Mosby. Zinger followed Mosby onto a transit bus. Mosby had a jacket slung over one shoulder and a black laptop bag with a strap over his other shoulder. Zinger observed Mosby place his jacket over the purse of a woman standing in front of him who would later be identified as Suzanne Gagne. Mosby unzipped Gagne's purse and reached inside it. Then he got very close to another passenger, who would later be identified as Patrick LeMay, and used his arm that was concealed under the jacket to pat down the man's right and left pockets. When Mosby touched LeMay's right rear pocket, LeMay looked down and "tried to swipe his hand" while he also covered his right rear pocket. *Id.* at 44-45. Then Zinger watched Mosby pat down LeMay's left rear pocket. Video surveillance footage from the bus was also admitted into evidence. *Id.* at 17.

5

In Nevada larceny from a person requires the intent to steal or appropriate property from the person of another without the other person's consent. NRS 205.270. An attempt is an "act done with the intent to commit a crime and tending but failing to accomplish it." NRS 193.330. *See* exh. 46, pp. 12–13, 15, 17 (jury instructions on larceny from the person and attempt).

Mosby has not shown that any rational trier of fact would not have found the essential facts of the crime beyond a reasonable doubt. He has failed to demonstrate that the Nevada Supreme Court decision on count 3 was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

**Count 5 — Larceny From The Person**

> did . . . willfully, unlawfully, and feloniously, under circumstances not amounting to robbery, with intent to steal or appropriate to h[is] own use, take from the person of another . . . Harpreet Chandi, without her consent, personal property, to-wit: a wallet and contents.

Exh. 22. Detective Zinger further testified at trial that Mosby followed a woman off the bus—later identified as Harpreet Chandi—who was wearing a backpack-style purse. Exh. 43, pp. 45-67. Mosby placed his bag on top of Chandi's, flipped both his bag and her purse upside down and said, "my bag is stuck on yours; my bag is stuck on yours." *Id.* at 45. When Mosby took a few steps away he had a green wallet in his hand. Zinger saw him take a one-hundred-dollar bill out of the wallet and then put the wallet on the ground. Mosby got back on the bus. The three victims had all exited the bus, and Zinger made contact with them. Zinger notified other detectives, Mosby was arrested, and another detective arrived and drove Zinger and the victims to the location of the arrest. Mosby was in possession of cash and wallets, including a one-hundred-dollar bill, Gagne's wallet, a wallet with credit cards and identification in the name of Glenn Hames, and about 80$ in Canadian currency. *See also* exh. 43, p. 107-109, 134-138.

6

Fellow bus passenger Dawn Johnson testified that she saw Mosby take the wallet out of Chandi's backpack-style purse, take something out of the wallet, and drop the wallet on the ground. Exh. 43, pp. 118-127. In response to defense counsel's questions, the witness said she did not see Mosby turn the backpack purse upside down or shake it, as Detective Zinger had testified. Exh. 43, p. 126.

Chandi testified similarly, stating that Mosby was very close to her when she exited the bus, and when she asked him what he was doing he said his bag was stuck on hers. Exh. 45, pp. 8-33. She subsequently realized her wallet was missing; when another passenger gave her the wallet from the ground a one-hundred-dollar bill that she always keeps in her wallet for emergencies was missing. On cross examination she testified that she never saw Mosby with her wallet.

Mosby has not shown that no rational trier of fact would have found the essential facts of the crime beyond a reasonable doubt. Mosby has failed to demonstrate that the Nevada Supreme Court decision on count 5 was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

**Count 6 — Possession Of Credit Or Debit Card Without Cardholder's Consent**

> did . . . willfully, unlawfully, feloniously, have in his possession, without the consent of the cardholder, a credit or debit card, to-wit: two (2) VISA credit cards issued in the name of Glenn Hames. With intent to circulate, use, sell, or transfer said card, with intent to defraud . . . Glenn Hames, and/or the issuer of said credit or debit card.

Exh. 22. Glenn Hames testified that he was visiting Las Vegas from Canada and was on a crowded bus when someone made an announcement that everyone should check to see if they are missing a wallet or other items. Exh. 43, pp. 72-93. Video surveillance footage showed Mosby in close proximity to Hames on the bus. *Id.* at 75. Hames stated that he had placed his wallet in his front pants pocket, but discovered it was missing. His wallet contained some U.S. currency, identification and credit cards in

his name and about $80 in Canadian currency. When he exited the bus, he saw a man on the ground in handcuffs and a black wallet behind the man that looked like his wallet, with what looked like his driver's license in it. Detectives had testified that when they arrested and searched Mosby they found Hames' wallet and $80 in Canadian currency in Mosby's rear pants pocket. *Id.* at 134-136; *see also* 82-84. Police returned the wallet and $80 in Canadian currency to Hames.

In Nevada:
> A person who has in his or her possession or under his or her control two or more credit cards or debit cards issued in the name of another person is presumed to have obtained and to possess the credit cards or debit cards with the knowledge that they have been stolen and with the intent to circulate, use, sell or transfer them with the intent to defraud. The presumption established by this subsection does not apply to the possession of two or more credit cards or debit cards used in the regular course of the possessor's business or employment or where the possession is with the consent of the cardholder.

NRS 205.690(3).

A jury may "draw reasonable inferences from basic facts to ultimate facts," *Jackson*, 443 U.S. at 319. Mosby has not shown that the Nevada Supreme Court decision on count 6 was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

**Count 7 — Obtaining And Using Personal Identification Information of Another**
> did . . . knowingly and feloniously obtain personal identifying information of another person, to-wit: a fake Nevada driver's license, and did use said identifying information to avoid or delay being prosecuted for an unlawful act, in the following manner, to-wit: by Defendant providing to LVMPD Officer T. Cord the said fake Nevada driver's license bearing the name of John Langston, but displaying driver's license number . . . belonging to Cassandra Landgrove.

Ex. 22. Detective Travis Cord testified that when he and Detective Christopher Neri apprehended Mosby he said his name was John Langston. Exh. 43, pp. 93-118. Mosby had a driver's license in his wallet in the name of John Langston. Cord stated that it was not Mosby in the photo on the license. Neri testified that he ran the license and it

8

came back as a valid license number, but registered to a different name, Cassandra Landrove. *Id.* at 127-145. Landrove testified at the 2011 trial that she had reported her driver's license stolen in January 2010. Exh. 45, pp. 6-8. She stated that she did not know anyone by the names of Marvin Mosby or John Langston, that no one by those names had permission to have her driver's license information, and that she had never seen Mosby outside of court.

The evidence supported the elements of the crime and Mosby's conviction. Mosby has failed to demonstrate that no rational trier of fact would have found the essential facts of the crime beyond a reasonable doubt. He has not shown that the Nevada Supreme Court decision on count 7 was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

Accordingly, Mosby's petition is denied in its entirety.

**IV.     Certificate of Appealability**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable

jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Mosby's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any of Mosby's claims.

**V.    Conclusion**

**IT IS THEREFORE ORDERED** that the petition (ECF No. 1) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED: September 12, 2019.

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE